Anthony Argiropoulos, Esquire
Thomas Kane, Esquire
Robert M. Travisano, Esquire
EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, NJ 07102
(973) 642-1900 (phone)
(973) 642-0099 (fax)
*Attorneys for Plaintiffs*
*HR Staffing Consultants, LLC and*
*Upstream Healthcare Management of*
*New Jersey, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HR STAFFING CONSULTANTS, LLC and UPSTREAM HEALTHCARE MANAGEMENT OF NEW JERSEY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD BUTTS, <br><br> Defendant. | CIVIL ACTION <br><br> DOCKET NO. <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiffs HR Staffing Consultants, LLC, and Upstream Healthcare Management of new Jersey, LLC, through their attorneys Epstein, Becker & Green, P.C., and by way of their Complaint against Defendant Richard Butts, hereby state the following:

**PARTIES AND JURISDICTION**

1.  Plaintiff HR Staffing Consultants, LLC ("HR Staffing") is a New Jersey limited liability company with its principal place of business in New Jersey. The Members of HR Staffing are residents of Maryland and Florida.

2. Plaintiff Upstream Healthcare Management of New Jersey, LLC ("Upstream") is a New Jersey limited liability company with its principal place of business in New Jersey. The Members of Upstream are residents of Maryland and Florida.

3. Defendant Richard Butts is an individual who resides in the State of North Carolina and works in the State of New Jersey.

4. Plaintiffs seek monetary damages in this action in excess of $75,000, exclusive of costs.

5. Plaintiffs seek injunctive relief in this action in the form of an Order enjoining Defendant Butts from being employed at CarePoint Health Management Associates, LLC in violation of his contractual non-compete agreement. The value of this injunctive relief to Plaintiffs also exceeds $75,000, and includes, but is not limited to: (1) the value of the training provided by Plaintiffs to Defendant Butts during the term of his employment; (2) the value of lost business opportunities that Plaintiffs would not be able to capitalize upon without Mr. Butts; (3) the value of Plaintiffs' inability to comply with their contractual obligations to third parties without Mr. Butts; and, (4) the value of lost trade secrets and the revelation of confidential information that Mr. Butts possesses.

6. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of costs.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

7. HR Staffing provides healthcare staffing, management and consulting services for healthcare related businesses.

8. CarePoint Health Management Associates, LLC ("CarePoint") is a for-profit healthcare conglomerate that owns and operates three Hudson County hospitals: Bayonne Medical Center, Christ Hospital in Jersey City and Hoboken University Medical Center (collectively the "CarePoint Hospitals").

9. In August 2014, HR Staffing and CarePoint entered into a Staffing Services Agreement (the "HR Staffing Agreement").

10. Pursuant to the HR Staffing Agreement, HR Staffing provides certain personnel staffing to support the CarePoint Hospitals' operations.

11. The owners of HR Staffing are also the principals and owners of Upstream.

12. Upstream is a healthcare management services and consulting firm that helps hospitals and physicians improve, innovate, manage, and expand their clinical and business operations.

13. In August 2014, Upstream and CarePoint entered into a Master Management and Services Agreement (the "MMSA").

14. Pursuant to the MMSA, Upstream provides healthcare consulting to CarePoint. Some of Upstream's accomplishments in the context of this relationship included developing and operating CarePoint's owned/employed physician network, managing various services lines at the hospitals and increasing overall revenue and profitability.

15. Given their common ownership and the fact that both entities have contracts with CarePoint, oftentimes Upstream utilizes HR Staffing employees to implement its policies and operational directives at the CarePoint Hospitals.

16. Moreover, pursuant to those agreements, at times Upstream installs HR Staffing employees in certain management level positions within the CarePoint Hospitals in order to

3

insure that its first-class management consulting services are being correctly and efficiently implemented for CarePoint.

17. Defendant Butts is one such HR Staffing employee.

## THE EMPLOYMENT AGREEMENT

18. Defendant Butts has been a key employee of HR Staffing for nearly five years.

19. He has been an important part of the organization and has learned HR Staffing and Upstream's industry-leading management techniques from the companies' principals over this period of time.

20. He also has been privy to confidential, business sensitive information regarding how both of these companies go about providing these highly effective services to their clients.

21. On February 17, 2014, Defendant Butts and HR Staffing entered into an employment agreement (the "Employment Agreement").

22. The Employment Agreement constitutes a binding contract which was made pursuant to the exchange of good and valuable consideration.

23. Pursuant to the Employment Agreement, Defendant Butts was hired to provide services to certain of HR Staffing's clients.

24. Consequently, Butts was installed by HR Staffing as the Vice President of Cardiovascular Services for the CarePoint Hospitals.

25. For the services he provided, Defendant Butt received a salary, was eligible for participation in a bonus plan and was reimbursed certain business-related expenses.

26. Section VIII of the Employment Agreement contains the following section, which limits Defendant Butts's use of the confidential information which he has been afforded in connection with this engagement:

> Employee acknowledges that he/she will be given and have access to or become informed of confidential or proprietary information which Company possesses or to which Company has access, which relates to Company, its affiliated entities and/or its Clients, which is not generally known to the public or in the trade, is a valuable asset critical to Company's success, constitutes a "trade secret" (as that term is defined by applicable law), and/or disclosure of which could result in a competitive or other disadvantage to Company (collectively and individually, "Confidential Information"), including without limitation, such information concerning: business and marketing plans, financial results and projections, the provision of contracts, plans for possible acquisitions, computer programs and codes, the identity, contacts, contact information, sales information, needs, preferences, trade secrets, prior or existing projects, and confidential information of Clients and potential clients, pricing, competitive bid information, project costs, requests for proposals, correspondence with Clients and potential clients regarding actual or prospective engagements, and the terms and conditions of Company's relationships with employees and independent contractors, including the amount and type of compensation paid to other Company employees and independent contractors. Confidential information includes information, lists, reports and the like prepared, developed, compiled or maintained by the Employee, and other employees, independent contractors, agents and representatives of Company prior to, in the course of and following Employee's employment status with Company, as well as, such other information to which Employee may have access in connection with Employee's employment with Company.
>
> Employee acknowledges that his/her employment status creates a relationship of trust and confidence between Employee and Company with respect to Confidential Information and, accordingly, Employee agrees that, during the term of this Agreement and after the termination of this Agreement, Employee shall not…(b) disclose, release or disseminate Confidential Information to any other party, except as required by law or as authorized in writing by Company's President and Managing Partner, or (c) discuss any element of a Client Engagement with any third party (other than a member of the team engaged by Company for the Client Engagement).

27. Pursuant to the Employment Agreement, the referenced confidential information constitutes trade secrets, which are not generally known throughout the industry.

28. On or about February 18, 2014, the parties amended the Employment Agreement to include the following covenant not-to-compete:

> Employee acknowledges that if he/she were to compete with the Company in furnishing Services as contemplated herein it would cause serious harm to Company. Employee also acknowledges that the furnishing of the Services

5

requires a significant commitment of time, that the marketplace for the Services is extremely competitive, and that Company competes against other providers of Services located throughout the region.

Therefore, in consideration of, among other things, the compensation to be paid by Company to Employee hereunder and as material consideration and inducement for Company to enter into this Agreement, and without in any manner limiting the other restrictions imposed against Employee under other provisions of this Agreement, Employee hereby covenants and agrees that throughout the term of this Agreement and during the twelve (12) month period immediately following the expiration, termination or non-renewal of the Agreement for any reason (collectively the "Restriction Period"), Employee shall not, except with Company's prior written consent…engage in the furnishing of any aspect of the Services as contemplated under this agreement and/or provide or enter into any contractual relationship relating to any aspect of such Service with any Client, hospital, healthcare facility, medical group, or other party or entity to provide consulting, management and/or other directorship services to, or participate in the management operation or development of, any medical practice, hospital or other health care facility that provides such professional medical services, at any healthcare facility or other location…anywhere in Hudson County and the surrounding counties…

29. Section VII of the Employment Agreement, as amended, entitled Term and Termination, includes the following provision:

The term of this Agreement shall commence on the Effective Date and shall continue until terminated pursuant to the following:

(a)  Employee may terminate this Agreement at any time on thirty (30) days written notice to the Company.

## RESIGNATION AND BREACHES

30. On May 1, 2015, Defendant Butts sent an email to HR Staffing's principals, Christopher Howard and Paul Ingledue, advising that: "I am resigning my position from HR Staffing effective today."

31. In that same email, Defendant Butts advised Howard and Ingledue that: "I will be continuing in my capacity as VP of [Cardiovascular] services with [the CarePoint Hospitals].

6

32. By providing notice that he was immediately resigning, Defendant Butts has violated the notice provisions of the Employment Agreement.

33. The 30-day notice provision is a significant part of the agreement because it allows HR Staffing to find a replacement employee and assures that services to its clients will proceed uninterrupted.

34. Furthermore, by working directly for one of HR Staffing's clients, *i.e.*, CarePoint, Defendant Butts is in breach of the non-compete covenant contained in the Employment Agreement.

35. Defendant Butts has also been privy to HR Staffing's and Upstream's confidential information which he is now sharing with CarePoint or otherwise applying in the context of his new employment. This is in direct breach of the confidentiality provisions of the Employment Agreement.

36. Additionally, Defendant Butts has refused to surrender his work computer, a computer which is HR Staffing property, which contains confidential information of both HR Staffing and Upstream, and which, upon information and belief, also contains emails and files which are relevant to Plaintiffs' claims in this case and will be subject to discovery requests.

## CONSPIRACY TO MINIMIZE HR STAFFING

37. For several months, CarePoint has been waging a multi-front strategy to terminate its contracts and usurp the benefits delivered by HR Staffing and Upstream, without having to pay those entities their just compensation for the services they continue to provide.

38. As part of this war against HR Staffing and Upstream, CarePoint forced Upstream to jettison a number of agreements the parties had together and enter into the MMSA which contained substantially more favorable terms to CarePoint.

7

39. Similarly, CarePoint forced HR Staffing to enter into the new Staffing Agreement.

40. CarePoint immediately received greater financial benefits through these new agreements—whereas, HR Staffing and Upstream realized no greater benefits. In fact, they received less compensation for the same services.

41. CarePoint also took steps to lock out Ingledue from servicing the CarePoint Hospitals, by asserting frivolous arguments under the parties' contracts.

42. Additionally, CarePoint went so far as to have Ingledue escorted by law enforcement from premises where he had a legal right to be.

43. CarePoint's attempt to poach Defendant Butts is just the latest front in this battle.

44. Defendant Butts' improper and illegal departure from HR Staffing is a clear attempt on the part of CarePoint to force HR Staffing into breaching its obligations under the HR Staffing Agreement.

45. Moreover, CarePoint's coopting of Defendant Butts is an attempt to usurp a contractual benefit provided by HR Staffing without having to pay all amounts due and owing to HR Staffing.

46. Defendant Butts's utilization of confidential information that belongs to HR Staffing fosters and facilitates CarePoint's nefarious strategy of minimizing Upstream and CarePoint.

## COUNT I
## BREACH OF CONTRACT

47. Each of the foregoing paragraphs is incorporated herein as if set out in full.

48. HR Staffing and Defendant Butts entered into the Employment Agreement on or about February 17, 2014.

49. There was good and valuable consideration exchanged for the Employment Agreement.

50. HR Staffing has performed all of its obligations pursuant to the Employment Agreement.

51. Defendant Butt has materially breached the Employment Agreement by: 1) resigning effective immediately, in contravention of the agreement's notice provisions; 2) being employed by a client of HR Staffing in clear contravention of the agreement's covenant not to compete; 3) soliciting other HR Staffing employees to terminate their relationships with HR Staffing to become employed with CarePoint; 4) utilizing the confidential information he gained as an employee of HR Staffing connection with his employment by CarePoint.

52. HR Staffing has been and continues to incur damages as a direct and proximate result of the foregoing breaches.

## COUNT II—BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

53. Each of the foregoing paragraphs is incorporated herein as if set out in full.

54. Defendant Butts has acted to deny HR Staffing the benefit of its bargain under the Employment Agreement.

55. The foregoing conduct constitutes a breach of the implied covenant of good faith and fair dealing.

## COUNT III BREACH OF FIDUCIARY DUTY

56. Each of the foregoing paragraphs is incorporated herein as if set out in full.

57. Pursuant to the Employment Agreement, Defendant Butts agreed that his "employment status creates a relationship of trust and confidence between" he and HR Staffing, with respect to certain confidential information.

58. Defendant Butts breached this relationship by coopting and utilizing this information for his own purposes and in direct contravention of the agreement.

59. Due to these material breaches, HR Staffing has been materially harmed and has sustained and continues to sustain damages.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS

60. Each of the foregoing paragraphs is incorporated herein as if set out in full.

61. As part of his employment with HR Staffing, Defendant Butts was privy to and learned in confidence certain trade secrets of HR Staffing and Upstream.

62. Pursuant to the Employment Agreement and otherwise, Defendant Butts owed a fiduciary duty to HR Staffing in connection with his use of said trade secrets.

63. These trade secrets are not known generally throughout the industry.

64. For Defendant Butts to use and/or disclose those trade secrets outside of his employment by HR Staffing is a violation of the fiduciary duties owes to HR Staffing.

65. The disclosure of these trade secrets was for his own or for another's benefit—not the benefit of HR Staffing.

66. HR Staffing has directly been damaged and continues to be directly damaged by the misappropriation of its trade secrets by Defendant Butts.

## COUNT V
## BREACH OF DUTY OF LOYALTY

67. Each of the foregoing paragraphs is incorporated herein as if set out in full.

68. Implied in employment relationships is the duty of loyalty, *i.e.*, that an agent shall loyally serve its principal and not utilize for the agent's own purpose and use any knowledge or information owned by the principal and gained exclusively as part of that employment.

69. Defendant Butts as agent owed HR Staffing as principal an undivided duty of loyalty.

70. Upon information and belief, Defendant Butts breached this duty by coopting and utilizing this information for his own purposes and for the purposes of CarePoint.

71. Due to these material breaches, HR Staffing has been materially harmed and has sustained and continues to sustain damages.

## COUNT VI
## UNFAIR COMPETITION

72. Each of the foregoing paragraphs is incorporated herein as if set out in full.

73. Through the foregoing pattern of unlawful conduct, Defendant Butts is attempting top unfairly compete with Plaintiffs through wrongful and deceptive practices, and/or practices which violate the "rules of the game" and a common business ethic.

74. As a result of this unfair competition, Plaintiffs have incurred, and will continue to incur, monetary damages.

## COUNT VII
## CIVL CONSPIRACY

75. Each of the foregoing paragraphs is incorporated herein as if set out in full.

76. Defendant Butts has entered into an agreement with CarePoint to pursue an illegal goal through legal means, or a legal goal through illegal means.

77. In furtherance of this agreement, Defendant Butts has taken overt acts, including but not limited to resigning from HR Staffing without notice, taking an employment position

11

with CarePoint, divulging confidential information and trade secrets to CarePoint, and refusing to surrender his HR Staffing-owned work computer.

78. As a result of this conspiracy and these overt acts, Plaintiffs have incurred, and will continue to incur, monetary damages.

## COUNT VIII
## CONVERSION

79. Each of the foregoing paragraphs is incorporated herein as if set out in full.

80. Defendant Butts has ascertained dominion over the property and effects of HR Staffing in a manner that is inconsistent with HR Staffing's property rights, and in so doing has converted HR Staffing's property.

81. Upon information and belief, Defendant Butts committed this act of conversion in order to wrongfully procure HR Staffing's confidential information and trade secrets and so that he can provide HR Staffing's confidential information and trade secrets to CarePoint.

82. Upon information belief, Defendant Butts committed this act of conversion in order to spoliate relevant evidence that resides on his work computer, including but not limited to emails and files which are relevant to Plaintiffs' claims in this case and will be subject to discovery requests.

WHEREFORE, Plaintiffs pray that this Honorable Court shall enter judgment in favor of Plaintiffs HR Staffing and Upstream and against Defendant Butts, and seek the following compensatory and equitable relief, including relief in the alternative:

    a.    Compensatory and punitive damages;

    b.    An order enjoining Defendant Butts from breaching his confidentiality, non-solicitation and non-compete covenants in his Employment Agreement with HR Staffing;

    c.    An award of attorneys' fees and costs; and,

    d.    Such other relief as the Court may deem appropriate.

By: /s/Anthony Argiropoulos
_____
Anthony Argiropoulos, Esquire
Thomas Kane, Esquire
Robert M. Travisano, Esquire
EPSTEIN BECKER & GREEN P.C.
One Gateway Center
Newark, NJ 07102
(973) 642-1900

*Attorneys for Plaintiffs*
*HR Staffing Consultants, LLC and*
*Upstream Healthcare Management of*
*New Jersey, LLC*

Dated: May 4, 2015

## JURY DEMAND

Plaintiffs demands a trial by jury on all issues so triable.

By: /s/Anthony Argiropoulos
_____
Anthony Argiropoulos, Esquire
Thomas Kane, Esquire
Robert M. Travisano, Esquire
EPSTEIN BECKER & GREEN P.C.
One Gateway Center
Newark, NJ 07102
(973) 642-1900

*Attorneys for Plaintiffs*
*HR Staffing Consultants, LLC and*
*Upstream Healthcare Management of*
*New Jersey, LLC*

Dated: May 4, 2015