UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HR STAFFING CONSULTANTS, LLC, and Upstream Healthcare Management of New Jersey, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Richard BUTTS,<br><br>Defendant. | Civ. No. 2:15-3155<br>(KM)(SCM)<br><br>MEMORANDUM and ORDER |

**KEVIN MCNULTY, U.S.D.J.:**

I have preliminarily enjoined the defendant, Richard Butts, from being employed by CarePoint within a five county area for a period of one year, and from sharing confidential information of the plaintiffs. The order was based on a non-compete covenant in Butts's employment contract with Plaintiff,[1] who was until recently his employer. My reasons are stated at length in my opinion of May 29, 2015, corrected version filed June 1, 2015. (Corrected version under seal, ECF No. 34; redacted version for public filing, ECF No. 39). Defendant immediately filed a notice of appeal on May 29, 2015 (ECF No. 33). Because I had given the parties the weekend to settle the form of order, the preliminary injunction itself was not filed in final form until June 2, 2015. (ECF No. 40)

Defendant has now filed an emergent motion for a stay of the

---

[1] For simplicity, I refer to HR Staffing and Upstream collectively as "Plaintiff."

1

portion of my order that enforced his restrictive employment covenant with Plaintiff. (ECF No. 37) I gave Plaintiff one day to file an opposition, and they have done so. (ECF No. 44) Defendant has today filed a Reply. (ECF No. 45)

Mr. Butts in effect seeks reinstatement to his position at CarePoint pending appeal. My consideration and disposition of his motion is, as a practical matter, a prerequisite to his seeking similar relief in the Court of Appeals. *See* Fed. R. App. P. 8(a)(1). I therefore consider it on an expedited basis.

A court that grants an injunction always retains the power to modify or vacate it, even while an appeal is pending. *See generally* Fed. R. Civ. P. 60(c); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). What Mr. Butts seeks here, however, is more akin to a traditional stay pending appeal. The Federal Rules of Appellate Procedure explicitly contemplate such a motion. *See* Fed. R. App. P. 8(a)(1)(C) (motion for "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending"). For such relief, "[a] party must ordinarily move first in the district court." Fed. R. App. P. 8(a)(1); *see also* Fed. R. App. P. 8(a)(2) (motion may be filed in the Court of Appeals only if district court filing is "impracticable" or district court has already denied the stay).

The defendant, Richard Butts, has promptly filed his motion for a stay in this Court, as is procedurally proper. "[T]he standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction." *Conestoga Wood Specialities Corp. v. Secretary of U.S. Dept. of Health and Human Services*, 2013 WL 1277419 at *1 (3d Cir. Feb. 8, 2013). Like most preliminary injunctions, a stay pending appeal is governed by four equitable factors:

"(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

2

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies."

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (line breaks added for clarity) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). *Accord Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

A stay pending appeal is extraordinary relief that is not routinely granted. The bar is particularly high where, as here, the movant is seeking immediate relief from a preliminary injunction granted after an evidentiary hearing. In such a case, the movant is effectively asking the court to negate the preliminary injunction that it just granted. *See Conestoga*, 2013 WL 1277419, at *1 ("Therefore, in assessing the present motion for a stay pending appeal, we must consider the same four factors that the District Court considered after an evidentiary hearing, ultimately concluding that preliminary relief was not warranted.").

In this case, a stay pending appeal would be particularly inadvisable. Far from a mere preservation of some neutral status quo, it would be tantamount to victory for the defendant. As a practical matter, it would obliterate the one-year ban on employment and enshrine the defendant's defection to CarePoint, without the required 30 days' notice and in violation of the non-compete provision in his employment contract.

Because the stay that defendant seeks is simply the other side of the preliminary injunction coin, I need not write at length. The reasons for denying a stay are those set forth in my opinion granting the preliminary injunction. (ECF No. 34). In that opinion, after briefing and an evidentiary hearing, I resolved the four injunction factors in a manner diametrically opposed to the defendant's positions in this stay motion.

I do, however, briefly address a few matters raised by the defendant's stay motion that were not addressed in my opinion. These relate primarily, but not entirely, to the likelihood of success on appeal.

### 1. Standard of review

The standard of review in the Court of Appeals will be a daunting one:

> We employ a tripartite standard of review for preliminary injunctions. "We review the District Court's findings of fact for clear error. Legal conclusions are assessed de novo. The ultimate decision to grant or deny the injunction is reviewed for abuse of discretion." *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (quoting *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 252 (3d Cir. 2002)).

*Geneva College v. Secretary U.S. Dept. of Health and Human Services*, 778 F.3d 422, 434–35 (3d Cir. 2015).

Legal matters, of course, receive plenary review, but there was little disagreement as to the general principles of New Jersey law governing noncompetition covenants. The opinion from which defendant appeals contains detailed findings of fact. These were entered after an evidentiary hearing at which the court heard testimony and received exhibits. Defendant challenges, certain of those factual findings, which will be reviewed only for clear error. Finally, defendant will have to demonstrate that, in light of the law and the factual findings, this Court nevertheless abused its broad discretion in awarding injunctive relief.

### 2.   Prevention of disintermediation as a protectable interest

The main issue of law dividing the parties was the permissibility of considering the prevention of "disintermediation" as a legitimate employer interest, independent of an impermissible desire merely to suppress competition. In general support of that proposition, I cited principles of New Jersey case law governing the enforceability of non-

4

competes. (Opinion at 20–21) As to disintermediation specifically, I cited *Consultants & Designers, Inc. v. Butler Serv. Grp., Inc.*, 720 F.2d 1553 (11th Cir. 1983) (interpreting law of New Jersey and other states). (Opinion at 18–19) That case holds, soundly in my view, that protection against disintermediation is a legitimate basis for enforcement of a non-compete provision. This issue of law, although subject to de novo review, does not import a likelihood of reversal.

### 3. PSSA paragraph 1(d) and the placement fee waiver

Both parties acknowledge that Butts's Employment Agreement contains a non-compete covenant. Defendant argues that an agreement between Plaintiff and CarePoint (the PSSA), gave CarePoint the right to "disintermediate," *i.e.*, to hire him directly. This argument was before me in connection with the preliminary injunction, but I did not discuss it at length, because it primarily concerned relations between the companies, not between Plaintiff and Defendant Butts. (Opinion at 26–27. A copy of the PSSA, which is Plaintiff's Exhibit 27, may be found at ECF No. 6-1.)[2]

The PSSA provides that Plaintiff will place long term permanent staff, including Butts, at CarePoint. Such staff remain employees of Plaintiff, and their salaries are paid by Plaintiff. *See* PSSA part IV. CarePoint is billed for such employees "on a cost plus 15% basis." PSSA Ex. B. Should such an employee be hired by CarePoint, there is a placement fee of (to simplify a bit) 10% of that employee's first year salary. *Id.* Paragraph 1(d) of the PSSA provides, however, that "[U]pon notice by CarePoint, these Existing LTP Staff [*i.e.*, those on an attached list, including Butts] can be hired directly by CarePoint without payment of a placement fee."

---

[2] Carepoint, in the PSSA, also protected itself by prohibiting Plaintiff from soliciting employees within 6 months of termination, and prohibiting Plaintiff from providing staffing or recruiting services to any direct competitor of CarePoint—defined as any hospital in Hudson County or within five miles of future-acquired hospitals. PSSA Section VI.

According to Butts (and CarePoint's witness Dobin), the words "can be hired directly by CarePoint" waive the non-compete to which Butts was subject. I disagree. Read most naturally, this is not a grant of permission to hire away employees, but merely a waiver *of the placement fee, in the event* certain personnel were hired. The hiring of any particular person might be impossible, impractical, or prohibited for any number of reasons. One of those might be the existence of a non-compete restriction. As stated in my Opinion, Butts and CarePoint acted with their eyes open; they had full knowledge of Butts's non-compete and of Plaintiff's unwillingness to waive it.

But I do not purport to give a comprehensive or authoritative statement of the rights of Plaintiff and CarePoint vis-à-vis each other, which are being litigated in state court. This federal action is primarily governed by the Employment Agreement between Plaintiff and Butts. As pointed out in my Opinion, Butts's Employment Agreement could be altered or waived only by a written instrument signed by both Butts and the Plaintiff. There is no such written waiver. The PSSA was an agreement between the Plaintiff and CarePoint, not between Plaintiff and Butts. The PSSA does not grant Butts the right to disregard the non-compete in his Employment Agreement.

### 4. The C-Port-E program and alleged harm to CarePoint

As to the reasonableness of the non-compete (as well as the public interest and harms to third parties), Defendant submits a declaration of Nizar Kifaieh, CarePoint's Chief Medical Officer. (ECF No. 37-2) Kifaieh primarily contends that Defendant Butts's continued employment by CarePoint is critical to the continuation of the C-PORT-E (elective angioplasty) program, which is apparently in the process of graduating from the preliminary study phase.[3] According to Kifaieh, the

---

3   The study "invited hospitals licensed to perform primary percutaneous

promulgation of new regulations is "imminent," and CarePoint will soon be resubmitting a Certificate of Need application to continue providing this service. (CarePoint has seemingly been performing the procedure at its Bayonne facility.)

Nothing about the C-PORT-E program was raised in connection with the preliminary injunction application. Because no one testified about it at the hearing, Kifaieh's statements about the crucial role of Defendant Butts were not explored or tested by cross-examination. For that reason alone, I would give it little weight. I nevertheless consider it in connection with the application for a stay.

Plaintiff has submitted a Declaration of Paul Ingledue (ECF No. 44-1) in opposition to that of Kifaieh. Ingledue documents that the C-PORT-E study concluded in May 2012. The new regulations, far from being "imminent," have been pending since then and the date of their promulgation, he says, is unknown. C-PORT-E involves a single procedure—elective angioplasties—and does not affect others. In addition, it is not known which hospitals will be authorized to perform the procedure as contemplated by the study. Finally, Ingledue points out that he himself (now acting as CarePoint's COO) was directly involved in, and is knowledgeable about, the C-PORT-E initiative. And the persons who worked under Ingledue in connection with the initiative, other than Butts, remain at CarePoint.

In reply, Defendant offers the declaration of CarePoint's CEO, Dennis Kelly. (ECF No. 45-1) Kelly states that Ingledue (unlike Kafaieh) is not a physician; that Butts, in addition to being an administrator, plays a clinical role and has been "coordinating and spearheading" the critical C-PORT-E initiative; and that elective angioplasty is important for the

---

transluminal coronary angioplasty (PTCA), but not licensed to perform cardiac surgery, to submit CN applications to perform elective PTCA." *Cooper University Hosp. v. Jacobs*, 922 A.2d 731, 733–34 (N.J. 2007).

7

long-term economic health of CarePoint. He states that the final amended regulations are "expected to issue on June 20, 2015," based on Butts's email report of a conversation. The affidavit then adds a plethora of new allegations about threats to expansion, and so on.

Nothing about these affidavits upsets the essential balancing of equities in my preliminary injunction opinion and order. As to the alleged additional harms to CarePoint, I add the following:

*First,* if Butts's continued participation in C-PORT-E matters were so critical, I would expect it to have been raised in connection with the preliminary injunction hearing.

*Second,* if Butts's continued role is so critical, there is little excuse for his disruptive and risky switch from Plaintiff to CarePoint, in violation of his non-compete and without the required 30 days' notice.

*Third,* if Butts's continued role is so critical, there is even less excuse for CarePoint's having jeopardized it by hiring him with full knowledge of the non-compete and Plaintiff's refusal to waive it. Any harm to CarePoint, assuming it is real, is self-inflicted.

*Fourth,* Butts's continued participation in C-PORT-E and any other program at CarePoint was easy to ensure. He could have continued on at CarePoint indefinitely pursuant to the PSSA. Even now, Plaintiff has expressed willingness to rehire Butts and reinstate the prior arrangement. (Hearing Tr. 142–43)

### 5.   Incorporation of prior Opinion

This Opinion highlights some matters newly raised in connection with the stay application. In all other respects, I incorporate my prior Opinion (ECF No. 34), in which I granted the motion for a preliminary injunction. For the reasons expressed there, and here, the applicable factors—likelihood of success, irreparable harm, harm to others, and the public interest—do not weigh in favor of a stay pending appeal.

factors—likelihood of success, irreparable harm, harm to others, and the public interest—do not weigh in favor of a stay pending appeal.

## ORDER

Accordingly, **IT IS** this 4th day of June, 2015,

**ORDERED** that Defendant's motion for a partial stay of the preliminary injunction pending appeal be **DENIED**.

**KEVIN MCNULTY**
**United States District Judge**