UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HR STAFFING CONSULTANTS, LLC, and Upstream Healthcare Management of New Jersey, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Richard BUTTS,<br><br>Defendant. | Civ. No. 2:15-3155<br>(KM)(JBC)<br><br>MEMORANDUM AND ORDER |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion (ECF No. 58) of Plaintiffs HR Staffing Consultants, LLC ("HR Staffing") and Upstream Healthcare Management of New Jersey, LLC ("Upstream"), to reduce the security required to maintain this Court's June 2, 2014 preliminary injunction.[1]

On June 2, 2015, I entered a preliminary injunction order restraining Mr. Butts from:

> 1. Being employed by CarePoint Health Management Associates, LLC ("CHMA"), and/or any entities affiliated by common ownership with CHMA (collectively, "CarePoint"), within the Counties of Hudson, Bergen, Essex, Passaic, and Union Counties, for the period June 1, 2015 through May 31, 2016;

---

[1] I write this memorandum opinion primarily for the parties. Familiarity with the case is assumed. My previous opinion, granting a preliminary injunction to Plaintiffs, contains background information for this case. (*See* ECF No. 39)

1

and

2. Disclosing to CarePoint any confidential or proprietary information, or trade secrets, of Plaintiffs.

(ECF No. 40) That order also required Plaintiffs, pursuant to Fed. R. Civ. P. 65(c), to post security in the amount of $300,000 (representing Mr. Butts's annual salary at CarePoint), within 30 days after June 2, 2015. (*Id.*)

On July 1, 2015, Plaintiffs did post security in the amount of $300,000. (ECF Nos. 52, 53)

Since that time, I have learned that Mr. Butts has continued his employment with CarePoint, albeit in a different capacity.[2] In light of Mr. Butts's continued employment, Upstream and HR Staffing request that this Court reduce the amount of the security. Mr. Butts admits that his "current salary of $300,000 is the same as the security provided in the injunction" (Def. Opp. 1, ECF No. 59) — *i.e.*, the same as his salary prior to the entry of the injunction.

Pursuant to the Federal Rules, this Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." Fed. R. Civ. P. 65(c).

The Third Circuit has "strictly interpreted the bond requirement of Rule 65(c) and [has] recognized that such a bond 'provides a fund to use to compensate incorrectly enjoined defendants.'" *Elliott v. Kiesewetter*, 98 F.3d 47, 59 (3d Cir. 1996) (quoting *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 (3d Cir. 1990)).

---

[2] Upstream and HR Staffing characterize this capacity as one that "supposedly" does not violate the preliminary injunction order. (Pl. Mot. 1, ECF No. 58) On June 8, 2015, I held a telephone conference regarding Upstream and HR Staffing's concerns about Mr. Butts's current employment. Upstream and HR Staffing have not made any motion asserting a violation of the preliminary injunction.

> Although the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary. While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory. We have held previously that absent circumstances where there is no risk of monetary loss to the defendant, the failure of a district court to require a successful applicant to post a bond constitutes reversible error.

*Hoxworth*, 903 F.2d at 210 (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988)). As Butts points out, the Third Circuit has "never excused a District Court from requiring a bond where an injunction prevents commercial, money-making activities." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010).

My injunction excluded Butts from his current position for a year. As I saw the matter at the time, the likely effect of an erroneous injunction would be a year of unemployment, and the loss of a year's income—a rough measure, to be sure, but reasonable. Hence I fixed the amount of the bond at one year's salary.

As Butts himself concedes, he continues to earn a $300,000 annual salary from CarePoint—precisely the salary he was earning before. (*Id.* 1 ("Mr. Butts's current salary of $300,000 is the same as the security provided in the injunction.")) In short, he stands to lose little or nothing, financially speaking, from an erroneous injunction.[3]

I will therefore reduce the amount of the bond to $10,000, which should more than cover any incidental damages should the preliminary

---

[3] Butts argues that HR Staffing and Upstream agreed to the $300,000 security amount knowing that Mr. Butts would continue to work for CarePoint and earn the same salary. Based on the email exchange between the parties, I am not persuaded that was the case. (Pl. Mot. Ex. A, ECF No. 58-2; Def. Opp. Ex. A, ECF No. 59-1) Certainly this Court was not aware of Mr. Butts's current salary, or CarePoint's plans to maintain his employment, at the time the preliminary injunction order issued.

injunction be reversed on appeal. I note that the United States Court of Appeals has denied a stay, but ordered expedited briefing, and has scheduled the case for oral argument in September.

## ORDER

For the foregoing reasons,

**IT IS** this 25th day of August, 2015,

**ORDERED** that the portion of my order (ECF No. 40) that set the amount of security at $300,000 is hereby amended, and that the required security is reduced to $10,000. The clerk shall release the balance of the posted security (*i.e.*, $290,000).

_____
**KEVIN MCNULTY**
**United States District Judge**